J-S80031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.M.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E.V.J.J., MOTHER | : | No. 2669 EDA 2017 |

Appeal from the Order Entered August 16, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000417-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A.M.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E.V.J.J., MOTHER | : | No. 2672 EDA 2017 |

Appeal from the Order Entered August 16, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000418-2017

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 06, 2018**

D.E.V.J.J. ("Mother") appeals from the Orders granting the Petitions filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to her female children, D.D.M.A.J. (d/o/b 4/2013) and D.A.M.A.J. (d/o/b 5/2014) (collectively, "Children") pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption

Act, and to change Children's permanency goals to adoption.[1]  Additionally,

Mother's counsel, Patricia A. Cochran, Esquire ("Attorney Cochran"), has

filed a Petition to Withdraw as counsel and a brief pursuant to *Anders v.*

*California*, 386 U.S. 738, 744 (1967).[2]  We affirm, and grant Attorney

Cochran's Petition to Withdraw.

The trial court set forth an extensive recitation of the factual and

procedural history in its Opinion, which we adopt for the purpose of this

appeal.  *See* Trial Court Opinion, 9/26/17, at 1-2, 3-15.[3]

On October 23, 2017, Attorney Cochran filed her Petition to Withdraw

as counsel and an *Anders* brief.  In the *Anders* brief, Attorney Cochran

raises the following questions for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional

---

[1] In separate Orders, the trial court terminated the parental rights of D.L.A. ("Father"), the father of Children.  Father did not file an appeal.

[2] In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights.

[3] D.D.M.A.J. was adjudicated dependent on June 8, 2015, while D.A.M.A.J. was adjudicated dependent on July 30, 2015.

- 2 -

needs of [Children] as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether[] the trial court erred because the evidence was overwhelming and undisputed that [M]other demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [Children?]

*Anders* Brief at 7.[4]  Mother has not filed a *pro se* brief or retained new counsel.

"When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw."  *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he or she must do the following:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal. . .; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*Id.* (citation omitted).

_____

[4] The Argument section in the *Anders* brief includes a single argument and is not "divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a).

In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief

 (1) provide a summary of the procedural history and facts, with citations to the record;

 (2) refer to anything in the record that counsel believes arguably supports the appeal;

 (3) set forth counsel's conclusion that the appeal is frivolous; and

 (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. "After an appellate court receives an **Anders** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." **In re S.M.B.**, 856 A.2d at 1237.

Attorney Cochran has complied with each of the requirements of **Anders**. Attorney Cochran indicates that she has conscientiously examined the record and determined that an appeal would be frivolous. Further, Attorney Cochran's **Anders** brief comports with the requirements set forth by the Supreme Court of Pennsylvania in **Santiago**. Finally, attached to Attorney Cochran's Petition to Withdraw is a copy of her letter to Mother, dated October 23, 2017, advising Mother of her right to proceed *pro se* or

retain alternate counsel, and stating Attorney Cochran's intention to seek permission to withdraw. Accordingly, Attorney Cochran has complied with the procedural requirements for withdrawing from representation, and we will proceed with our own independent review to determine whether the appeal is frivolous.

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re T.C.*, 984 A.2d 549, 551 (Pa. Super. 2009) (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and

resolve conflicts in the evidence." ***In re D.L.B.***, 166 A.3d 322, 326 (Pa. Super. 2017) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***Id.*** (citation omitted).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will review the trial court's decision to terminate Mother's parental rights based upon sections 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

- 6 -

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

> Parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his [C]ourt has held that the parental obligation is a positive duty[,] which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (quotation marks and citations omitted). Further,

> [a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In her first claim, Mother contends that the trial court erred in granting the Petition to involuntarily terminate her parental rights to Children, because DHS did not satisfy, by clear and convincing evidence, that her parental rights should be terminated. *Anders* Brief at 22. Mother argues that she has not evidenced a settled purpose of relinquishing her parental claims to Children or refused to perform her parental duties. *Id.* at 29.

The trial court addressed Mother's claims and determined that there was clear and convincing evidence to support the termination of Mother's

parental rights. *See* Trial Court Opinion, 9/26/17, at 18; *see also id.* at 12-15 (detailing the testimony of Children's case manager, stating that Mother had failed to complete her single case plan objectives). After a careful review of the record, we find that there is competent evidence in the record that supports the trial court's findings and credibility determinations. We, therefore, find no reason to disturb the trial court's conclusions or its discretion in terminating Mother's parental rights to Children under section 2511(a)(1). *See id.*; *see also In re B., N.M.*, 856 A.2d 847, 858 (Pa. Super. 2004) (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life, and that father's wish to not have his parental rights terminated was insufficient to protect those rights without affirmatively fostering a parental relationship with child).

Regarding section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*; *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "the court must

take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). "[C]ourts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. Finally, although the focus in terminating parental rights under section 2511(a) is on the parent, it is on the child under section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*); *see also In re Z.P.*, 994 A.2d at 1125 (stating that, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

Mother contends that the trial court erred in determining that termination served Children's best interests under section 2511(b). *Anders* Brief at 23, 30. Mother argues that that there was no evidence presented demonstrating a lack of a bond with Children, or that termination would best serve Children's interests. *Id.* at 30.

Here, the trial court found that the evidence demonstrated, by clear and convincing evidence, that Mother cannot provide safety and security for Children, and that Children are bonded to their foster mother. *See* Trial Court Opinion, 9/26/17, at 19-21. The trial court's determination that

Mother cannot provide for Children's needs and welfare, and that their best interests are served by the termination of Mother's parental rights, is supported by competent, clear and convincing evidence in the record. *See id.*; *see also In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years). Thus, we conclude that the trial court did not abuse its discretion in terminating the parental rights of Mother under section 2511(b), and affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion, 9/26/17, at 19-21.

Mother also challenges the goal change to adoption. *Anders* Brief at 22-23.[5]

---

[5] We note that while the challenge to the goal change was raised in the Argument section of the *Anders* brief, Mother failed to raise the change of Children's permanency goal to adoption under 42 Pa.C.S.A. § 6351 in her Concise Statement or the Statement of Questions Involved. *See Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal). However, "[o]nce counsel has satisfied the above requirements [for a motion to withdraw and *Anders* brief], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)). Thus, we may address whether DHS established the grounds for the goal change to adoption as part of our independent review.

Our standard of review in a dependency case is as follows:

The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.]

*In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (citation and quotation marks omitted).

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child. *In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (noting that "[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved."); *see also In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

When considering a petition for goal change for a dependent child, the trial court considers

the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d at 533 (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, Section 6351(f.1) requires the trial court to make the following additional determination regarding the child's placement goal:

> **(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> *     *     *
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

Our review discloses sufficient evidence in the record to support the trial court's change of Children's permanency goals to adoption pursuant to section 6351 of the Juvenile Act. Indeed, the record reflects that Children had been in DHS's legal custody for over twenty months at the time the Petition was filed; Children had been in foster mother's care since May 2015; and Children's foster mother met all of their needs during this time. Thus, we conclude that the trial court did not abuse its discretion in changing the goal to adoption, as it was in Children's best interests.

Moreover, as we cannot find any additional meritorious issues in the record, and we agree with Attorney Cochran that Mother's appeal is

frivolous, we grant Attorney Cochran's Petition to Withdraw from representation.

Orders affirmed. Petition to Withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/18

# THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
## IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN THE INTEREST OF | : FAMILY COURT DIVISION |
| | : JUVENILE BRANCH-DEPENDENCY |
| | : |
| D.D.M.A.J., a Minor | : CP-51-AP-0000417-2017/CP-51-DP-0001423-2015 |
| d/o/b: 04/ /2013 | : |
| | : |
| D.A.M.A.J., a Minor | : CP-51-AP-0000418-2017/CP-51-DP-0001441-2015 |
| d/o/b: 05/ /2014 | : |
| | : |
| | : |
| Appeal of: | : |
| D.E.V.J.J., Mother | : Superior Court Nos. 2669 EDA 2017 |
| | : 2672 EDA 2017-Consolidated; |
| | : 2631 EDA 2017, 2632 EDA 2017 |

## OPINION

D.E.V.J.J. ("Mother"), Appeals from the Decree and Order entered by this Court on August 16, 2017, granting the Petitions to Involuntarily Terminate Mother's Parental Rights to her two minor children: a female, D.D.M.A.J., (d/o/b April 2013), and a female, D.A.M.A.J., (d/o/b May 2014), and changing the Children's Permanency Goal to Adoption, filed by the Department of Human Services ("DHS") on April 12, 2017, and served on all parties.

---

[1] 9/05/2017-Review of these matters indicates that these appeals involve related parties and issues. Accordingly, the appeal at Nos. **2669** and **2672** EDA 2017 are hereby CONSOLIDATED. See Pa.R.A.P. 513.
9/19/2017- Order Directing Compliance with Pa.R.A.P. 3517-Notice of Appeal IFP, filed by Mother 8/16/2017: **2631** EDA 2017 and **2632** EDA 2017.

1

After Termination/Goal Change Hearings on June 7, 2017 and August 16, 2017, this Court found that clear and convincing evidence was presented to terminate the parental rights of Mother and D.L.A., ("Father".)   In response to the Order of August 16, 2017, terminating her parental rights, Mother, filed pro se appeals on August 16, 2017. Mother's counsel, also filed Notices of Appeal with Statement of Matters Complained of on Appeal on August 18, 2017.  Father did not file an Appeal to the termination of his parental rights.

## STATEMENTS OF MATTERS COMPLAINED OF ON APPEAL

In her Statements of Matters Complained of on Appeal, Mother raises the following issues:

1. Whether the trial court committed reversible errors, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. 2511 (a) (1), (2), (5), and (8).
2. Whether the trial court committed reversible errors, when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the Child as required by the Adoption Act, 23 Pa.C.S.A. 2511 (b).
3. Whether, the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her Child.

2

## PROCEDURAL HISTORY

D.E.V.J.J.. is the Mother of both Children: D.D.M.A.J. and D.A.M.A.J. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"a").

D.L.A. is the Father of both Children, and is listed as the Father on the Children's birth certificates. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"b").

On April 14, 2015, the Department of Human Services (DHS), received a Child Protectives Services (CPS) Report which alleged that D.A.M.A.J., 11 months old, was sitting in a baby bathtub that was placed in a regular bathtub; that Mother left the bathroom to get a towel and soap while the water was running; D.D.M.A.J., 24 months old, was also in the bathroom; that Mother admitted she heard the Child crying but thought that she was crying because she had left the bathroom; that Mother stated that she had left the bathroom for a maximum of 3-5 minutes; that she stated that when she returned, she found D.A.M.A.J. standing and no longer in the infant bathtub and observed what appeared to be the Child's skin floating in the tub; that Mother stated D.D.M.A.J. had turned on the water, which was too hot and running full force; that Mother called the ambulance and they were transported to the hospital; and that D.A.M.A.J. had sustained severe burns and was transported from Children's Hospital of Philadelphia (CHOP) to St. Christopher's Hospital Burn Center. This Report was founded. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"c").

3

On April 15, 2015, DHS made a visit to St. Christopher's Hospital and met with Mother and Father. Mother confirmed that she had left the room for 3-5 minutes while the younger Child was in the baby bathtub with the water running. Mother stated she heard the younger Child screaming, but she admitted that she did not return to the bathroom because the Child had been crying when she put her in the tub. Mother stated that when she returned, pieces of the Child's skin were floating in the tub. Mother stated the older Child had turned on the water full force. Mother stated that she called the ambulance and they were transported to CHOP and then subsequently taken to St. Christopher's Hospital. Father stated he was not at the home at the time of the incident. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"d").

On April 15, 2015, DHS observed that the younger Child had bandages on both legs and on her buttocks, and that she had a blister on her left hand between the thumb and first finger. The Child had sustained second-degree burns on her calf. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"e").

On April 15, 2015, Mother admitted to DHS that she uses marijuana and that she had used marijuana earlier that week. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"f").

On April 22, 2015, DHS visited with Mother and Father again at St. Christopher's Hospital. DHS observed that the Child was in pain and was crying, but Mother did not comfort the Child but was instead talking on her telephone. Father again stated that he was not present at the time of the incident and does not reside in the home. Father

4

admitted to DHS that he uses marijuana and that he had used marijuana during the previous week. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"g").

Mother stated that D.D.M.A.J. was residing with her Maternal Grandmother, T.J., while the parents stayed with D.A.M.A.J. at the hospital. Mother stated that the person with whom Maternal Grandmother is residing does not want DHS at the home and that DHS would be unable to meet with Mother at her home because she resides in transitional housing which does not allow visitors. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"h").

At that time, the Child was expected to remain hospitalized for 1-2 months due to the severity and amount of burns that she had sustained. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"i").

On May 18, 2015, DHS conducted an evaluation of Mother's home. DHS observed that the faucet handle was too tight to be able to be turned on by a two-year-old Child and that the room to which Mother stated that she had gone for 3-5 minutes during the incident was across the hall from the bathroom. A Safety Plan was developed which stated that Maternal Grandmother was going to continue to support the parents and ensure the safety of the Children. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"j").

During the Child's hospitalization, her parents were not attentive to her and did not respond when she cried, were not changing diapers, were not feeding her, and were

5

not participating in her care. Mother was not consistently visiting the Child and when she did visit, her visits were brief. It was also reported that Father was making inappropriate statements, and locked himself in the bathroom at the hospital for 90 minutes. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"k").

The Children lacked immunizations and had missed medical appointments. D.A.M.A.J. was last seen by her Primary Care Physician (PCP) in October 2014. D.D.M.A.J. had also missed multiple appointments and there were concerns about her weight. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"l").

On May 27, 2015, a Safety Conference was held, and neither the parents nor the Maternal Grandmother attended. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"m").

On May 27, 2015, DHS obtained an Order of Protective Custody (OPC) for D.D.M.A.J., and she was placed with a family friend, P.W. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"n").

On May 29, 2015, DHS obtained an Order of Protective Custody (OPC) for D.A.M.A.J., and the Child remained hospitalized at St. Christopher's Hospital. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"o").

A Shelter Care Hearing for D.D.M.A.J., was held on May 29, 2015, before the Juvenile Court Hearing Officer, William T. Rice. The Court entered an order lifting the

OPC and transferred legal custody of the Child to DHS. Placement of the Child in Foster Care. Parents are to have supervised line-of-sight visits twice weekly at the Agency. Child is safe as of 5/27/2015. (Shelter Care Order, 5/29/2015).

A Shelter Care Hearing for D.A.M.A.J., was held on June 1, 2015, before the Honorable Allan L. Tereshko. The Court entered an order lifting the OPC and transferred legal custody of the Child to DHS. Placement of the Child in Foster Care. Parents are to have supervised line-of-sight visits twice weekly at the Agency. Child is safe as of 6/01/2015. (Shelter Care Order, 6/01/2015).

An Adjudicatory Hearing for D.D.M.A.J. was held on June 8, 2015, before the Honorable Allan L. Tereshko. The Court found that legal custody of the Child to remain with DHS and placement continues with a family friend in Kinship Foster Care through CUA Wordsworth. Parents are to continue supervised line-of-sight visits twice weekly at the Agency. Parents are referred to ARC for services, and for CEU assessment, forthwith full drug and alcohol screen, dual diagnosis and three (3) random drug/alcohol screens prior to next court date. Parents also referred for Parenting Capacity Evaluations. DHS/CUA to apply for Child's birth certificate, if necessary. (Order of Adjudication and Disposition-Child Dependent, 6/08/2015).

On June 8, 2015, both Mother and Father tested positive for cannabis at the CEU. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"s").

A Continuance was granted on 6/11/2015 for D.A.M.A.J.'s case, no available Judge or Master. (Continuance Order, 6/11/2015).

7

On June 23, 2015, an Initial SCP meeting was held. The parental objectives for Mother and Father were to complete three (3) random drug screens, enroll in ARC and complete the program, attend supervised visits twice a week and complete and follow all objectives in the SCP. Neither parent participated in the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"t").

A Continuance was granted on 7/13/2015 for D.A.M.A.J.'s case, request by parties for matters to be heard by Judge. Child in foster care through Wordsworth. Case to remain status quo. (Continuance Order, 7/13/2015).

An Adjudicatory Hearing for D.A.M.A.J. was held on July 30, 2015, before the Honorable Allan L. Tereshko. The Court found that legal custody of the Child to remain with DHS and placement continues with a family friend in Kinship Foster Care through CUA Wordsworth. Child is to be screened by Ages and Stages program. Parents are to continue CUA supervised line-of-sight visits twice weekly in the home of the care provider and can be modified by agreement of the parties. Parents referred to CEU forthwith full drug and alcohol screen dual diagnosis, assessment, monitoring and three (3) random drug/alcohol screens prior to next court date. Aggravated Circumstances to be held next hearing. Child safety as of 7/24/2015. (Order of Adjudication and Disposition-Child Dependent, 7/30/2015).

On August 17, 2015, Mother tested positive for cannabis at the CEU. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"v").

8

Continuances were granted on 9/10/2015, for both Children's cases, Child Advocate unavailable. Children are to remain as committed. Next Court date listed for Aggravated Circumstances Hearing. Dr. Maria McColgan may testify via phone at the next listing. Dr. McColgan's Report is to be provided to all counsel. (Continuance Orders, 9/10/2015).

On September 22, 2015, CUA held a SCP meeting. The parental objectives for Mother were to complete three (3) random drug screens, remain enrolled in ARC, and attend appointments and complete PCE. Neither parent participated in the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"x").

Permanency Review Hearings were held for both Children on November 16, 2015, before the Honorable Allan L. Tereshko. Orders were entered that legal custody of the Children to remain with DHS, and placement to continue in Foster Care (Kinship) through Delta. Children are doing well in placement, are not receiving any special services at this time, and are medically up-to-date. Mother and Father to participate in a dual diagnosis as recommended by the CEU, and referred to CEU for monitoring and three (3) random drug screens prior to next court date. Mother and Father are referred for Parenting Capacity Evaluations. (Permanency Review Orders, 11/16/2015).

Also on November 16, 2015, an Aggravated Circumstances Hearing was held for D.A.M.A.J. The Court found that clear and convincing evidence was presented to establish that the alleged aggravated circumstances exist as to the Mother. The Child has been a victim of physical abuse resulting in serious bodily injury, proven as to Mother. (Aggravated Circumstances Order, 11/16/2015).

9

On November 16, 2015, the CEU reported that Mother tested positive for marijuana on 6/8/2015 and 8/17/2015. The CEU recommended Mother participate in Outpatient Dual Diagnosis treatment and scheduled an intake appointment for her at Parkside-Frankford treatment facility on 10/12/2017. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"y").

Permanency Review Hearing was held on February 18, 2016, for both Children before the Juvenile Court Hearing Officer, Carol A. Carson. The Court ordered legal custody of the Children to remain with DHS, and placement to continue in Foster Care (Kinship). Mother had 3 drug screens on 1/29/2016, 2/01/2016 and 2/09/2016 and all were negative. Parents are to attend their PCEs. Mother is referred to CEU for a forthwith drug screen, 3 randoms, dual diagnosis and monitoring. (Permanency Review Orders, 2/18/2016).

On March 29, 2016, CUA held an SCP meeting. The parental objectives for Mother were for her to complete three random drug screen, remain enrolled in ARC, attend appointments and complete PCE, take Children on community outings, weather permitting, call three hours prior to scheduled visits to cancel, and sign all necessary authorizations and releases for the Children. Neither parent participated in the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"dd").

On May 18, 2016, CEU reported that Mother failed to attend her intake appointment at Parkside-Frankford for Outpatient Dual Diagnosis treatment scheduled on 10/12/2015. However Mother was admitted into treatment on 5/3/2016. (Exhibit "A"

10

Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"ee).

Permanency Review Hearing was held on May 19, 2016, for both Children before the Juvenile Court Hearing Officer, Carol A. Carson. The Court entered Orders for legal custody of the Children to remain with DHS, and placement to continue in Foster Care (Kinship). Mother's CEU Report incorporated by reference. Mother re-referred to CEU for monitoring, and dual diagnosis treatment at Frankford-Parkside Outpatient Program. Mother to continue appropriate services through ARC program. Mother to comply with 2nd part of PCE, and CUA to follow up. CUA to refer Children for Ages and Stages evaluation. Mother to continue with 1 community visit, and 1 visit in the caregiver's home, supervised by caregiver. (Permanency Review Orders, 5/19/2016).

Continuances were granted on 8/11/2016 for both Children's cases, Child Advocate request cases be heard by Judge. (Continuance Orders, 8/11/2016).

Continuances were granted on 11/16/2016 for both Children's cases. DHS commitments stand. Child Advocate request cases be heard by a Judge. Cases to remain status quo. (Continuance Orders, 9/16/2016).

On February 6, 2017, the CEU reported that Mother was discharged from Parkside-Frankford on July 18, 2016. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 4/12/2017, ¶"ii).

Permanency Review Hearing was held on February 6, 2017, for both Children before the Honorable Allan L. Tereshko. The Court entered Orders for legal custody of the Children to remain with DHS, and placement to continue in Foster Care (Kinship) through Delta. Mother to have supervised visits with the Children at the Agency.

11

Mother ordered to CEU forthwith for screen and 3 randoms prior to next court hearing. Mother ordered to BHS for consultations and/or evaluations. Children are doing well in care and are medically up-to-date. (Permanency Review Orders, 2/06/2017).

**TERMINATION HEARINGS**

This Court held the first Contested Termination and Goal Change Hearing on June 7, 2017, regarding both Mother and Father's parental rights. Mother, D.E.V.J.J., attended the hearing and was represented by counsel. (N.T. 6/07/2017, p.5 at 14-19).

Counsel for DHS, Caitlin Dunston, stated the parties were in agreement to proceed and to stipulate to the statement of facts that were filed within the Petitions to Involuntarily Terminate the Parental Rights and to Change the goal to Adoption.

The Court stated, "In the matter of termination of parental rights of Mother and Father of these two Children, there's an agreement that we shall proceed by stipulated trial. And at the conclusion of the submission of evidence, there's a request that I take the matter under advisement and not rule on the evidence at this time and allow the parties to execute voluntary relinquishments, which I do today." (N.T. 6/07/2017, p.8 at 5-19).

The first witness to testify was Kennisha White, Case Manager from CUA. Ms. White stated she has been the Case Manager since August 2, 2016, and the Children were placed in a kinship resource home certified through Delta with P.W., the Foster Mother. The Children have been with P.W. since May of 2015. (N.T. 6/07/2017, p.9 at 1-25; p.10 at 1-20).

The Children became known to DHS when the younger Child, D.A.MA.J, sustained second degree burns to her lower extremities and feet after being left in the

12

bathtub unsupervised with the water running. Both Children were in Mother's care at the time. She stated both Children were Adjudicated Dependent, and the Court found Mother committed child abuse and found Aggravated Circumstances against her. (N.T. 6/07/2017, p.10 at 21-25; p.11 at 1-14).

Ms. White testified the SCP objectives for Mother were to comply with the CEU forthwith and three (3) random drug screens; to attend BHS for consultation and evaluation; comply with visitation; complete the Parenting Programs and attend Family School. She stated Mother had attended PPP Parenting classes in March and completed two of the four classes. She stated that prior to April 2017, Mother had not enrolled in a drug and alcohol or mental health program. Regarding visitation, Mother was not consistent with them and would often 'no show'. (N.T. 6/07/2017, p.11 at 15-21; p.14 at 1-25; p.15 at 1-8).

Regarding D.D.M.A.J., now four years old, Ms. White stated the Child does not have special needs and services are not needed. The Child is enrolled in a pre-K program at the Learning Center, and is up-to-date medically. All of the Child's educational, medical, and emotional needs are being provided by the Foster Mother, P.W. She stated the Mother's involvement with the Child has been minimal. (N.T. 6/07/2017, p.15 at 9-25).

Regarding D.A.M.A.J., now three years old, Ms. White stated this was the Child who sustained the physical injury that burned her body. The Child still requires ongoing medical treatment and is in the process of receiving corrective surgeries related to the burns. The Foster Mother, P.W., is the person who ensures the Child is taken to all

13

medical/surgical appointments and also ensures the aftercare, which included changing the Child's dressings. (N.T. 6/07/2017, p.16 at 1-24).

Ms. White testified she had multiple conversations with the Children and both expressed they are willing to visit with Mother, however, they do not want to be away from their Foster Mother. She has also observed the interaction between the Children and the Foster Mother, and they have a strong bond. The Children refer to her as GG, which is like Great Grandmother and they feel safe and enjoy being in her home. It is a healthy, positive bond with P.W. She stated she has observed the Children interact with Mother at the supervised visits and notes that the Children expressed to her that they are willing to visit with Mother, however, are not distressed when the visits end, and are excited to go back home to their caregiver. In fact, D.A.M.A.J. cries whenever the Foster Mother leaves the room or is away from her, so Ms. White decided she would transport the Children to visits because they were familiar with her and not react negatively. (N.T. 6/07/2017, p.17 at 1-25; p.18 at 1-25; p.19 at 1-24).

Ms. White opined both Children would not suffer irreparable harm if the Mother's parental rights were terminated, and believes adoption is in the best interests of both of the Children. She noted that the Foster Mother, P.W., is the pre-adoptive resource. She last saw the Children on 6/6/2017, and both were safe with their needs being met. (N.T. 6/07/2017, p.20 at 1-25).

On cross-examination by Lee Kuhlmann, GAL, Ms. White stated both Children are enrolled in preschool at the Learning Center, and are up-to-date with medical, dental, vision and hearing. She further stated that the surgical team at the hospital recommended that D.A.M.A.J. stay in the care of the Foster Mother to ensure that treatment continues.

14

She needs ongoing occupational and physical therapy to ensure that she will be able to use both of her feet. (N.T. 6/07/2017, p 21 at 9-25; p.22 at 1-25; p.23 at 1-6).

A second Contested Termination and Goal Change Hearing was held on August 16, 2017, regarding both Mother and Father's parental rights. Mother, D.E.V.J.J., attended the hearing and was represented by counsel. (N.T. 8/16/2017, p 5 at 20-23).

Ms. Dunston noted that neither Mother nor Father had signed voluntary relinquishment documents since the last hearing held on June 7, 2017. She testified she had conducted a home visit about two or three weeks prior and asked Mother about relinquishing her parental rights and Mother refused. The Children remain in the kinship home with P.W., the Foster Mother, whose home was certified by Delta, and as of 8/2/2017, both Children are safe and all of their needs are being met. (N.T. 6/07/2017, p.8 at 5-25).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an appeal from a decree terminating parental rights, an appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T.* *91 A.3d 197 Pa.Super.2014).*

15

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted) In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of

16

Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

These Children became known to DHS in April 2015 when D.A.M.A.J., 11 months old, suffered second degree burns to her lower body while sitting in a bath tub with hot running water. Her sister, D.D.M.A.J., 24 months old was also in the bathroom. Both Children were in Mother's care at the time and she left them unattended in the bathroom. Mother later admitted to DHS that she was a habitual marijuana user. The younger Child was treated at St. Christopher's Hospital's Burn Unit and both Children were placed in foster care.

There was a finding of Aggravated Circumstances against Mother on November 16, 2015, as to D.A.M.A.J. The Court found that clear and convincing evidence was presented to establish that the alleged aggravated circumstances exist as to the Mother. The Child has been a victim of physical abuse resulting in serious bodily injury, proven as to Mother.

### A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Mother's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2), (5), and (8)[2]

---

[2] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the

17

On Appeal, Mother states the Court erred by terminating her parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8). The Court disagrees, and found that clear and convincing evidence that Mother failed and refused to perform parental duties, failed to address the conditions which brought the Children into placement, and lacks the capacity to adequately provide care and control and a stable environment necessary for the Children's well-being.

This Court relied on credible testimony by the CUA Case Manager, Ms. Kennisha White, who testified that Ms. White testified the SCP objectives for Mother were to comply with the CEU forthwith and have three (3) random drug screens; to attend BHS for consultation and evaluation; comply with visitation; complete the Parenting Programs and attend Family School. She stated Mother had attended PPP Parenting classes in March and completed two of the four classes. She stated that prior to April 2017, Mother had not enrolled in a drug and alcohol or mental health program. Regarding visitation, Mother was not consistent with them and would often 'no show'. Credible evidence was presented that Mother failed to complete, and still has not completed the objectives in the FSP.

---

parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

18

**B. Trial Court Properly Found that Termination of Mother's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[3]**

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court 'shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d.

Mother alleges on Appeal that the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the Children as required by the adoption act, 23 Pa.C.S.A. §2511(b). Mother also alleges the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort

---

[3] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

19

to maintain a parent-child relationship with her Children. This Court disagrees with these assertions.

This Court heard credible evidence presented by the CUA Case Manager, Ms. White, who testified that the Children were positively bonded to the foster parent, and referred to the bond as a grandchild-grandmother bond. They both look to her for safety and to meet their needs. In fact, the younger child, D.A.M.A.J., cries whenever the Foster Mother leaves the room or is away from her, so Ms. White decided she would transport the Children to visits because they were familiar with her and not react negatively. Ms. White also observed how the Children interact with Mother at the supervised visits. She noted that they expressed to her that they are willing to visit with Mother, and know that she is their Mother, but are not really affected by not being in her presence. They are not distressed when the visits end, and are excited to go back home to their caregiver.

She further testified that the surgical team recommended that the younger Child, D.A.M.A.J. stay in the Foster Mother's care to ensure that the Child will continue to attend and receive the necessary medical treatment she needs in the future to recover from her injuries. The Foster Mother has ensured that the younger child attended all of the surgical appointments, the follow-up appointments, and also tends to the aftercare of the injuries. Ms. White noted that the Child is going to require ongoing medical treatment as well as occupational and physical therapy. She also will have to attend the appointments for scar management for both feet to ensure the use of them.

20

Ms. White finally noted that the Children need the safety and security that Mother cannot provide, and they would not suffer irreparable harm if Mother's parental rights were terminated and it would be in their best interest to be adopted.

The Court found credible the evidence that the Children were not bonded to Mother and do not ask to be reunited with her. Therefore, this Court reasoned that the Children would not suffer irreparable harm if Mother's parental rights were terminated, and it would be in their best interests to be adopted.

## CONCLUSION:

At the conclusion of the Hearing the Court stated:

> The evidence today supports a finding that they failed to sign their vols. Therefore, the necessity to rule on the involuntary relinquishments was triggered. And at that last hearing, we had seven DHS documents admitted into evidence plus substantial testimony. The case does include aggravated circumstances.
>
> Based upon the circumstances of the Children coming into care—actually the Child at issue was D.A.M.A.J. who suffered second degree burns, left alone in the bathtub. Just some of the circumstances which supported a finding of aggravated circumstances and then the rest of the testimony indicates that both the Mother and Father failed to remedy any of the issues that brought the Children into care and will not likely be able to remedy those issues in going forward.
>
> I made a note that the evidence then offered—supporting a finding for Mother under 2511 (a)(1), (2), (5), and (8) and 2511 (b), and (5) and (8) being established because the Children were in Mother's care at the time of placement and the placement is now 26 months—approximately June of 2015.
>
> As to Mother, there is evidence that supports a finding that there will be no irreparable harm to the Children if her

21

rights were terminated. The goal for these two Children is now changed to adoption.

(N.T., 8/16/2017, p.10 at 1-25; p.11 at 1-25; p.12 at 2-9).


For the foregoing reasons, this Court respectfully requests that the Order of

August 16, 2017, Terminating Mother, D.E.V.J.J.'s Parental Rights to both Children and

changing the Children's Permanency Goals to Adoption be AFFIRMED.


**BY THE COURT:**

_____
ALLAN L. TERESHKO, Sr. J.

Sept 26th, 2017
DATE

22